IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-02471-PAB-STV

VERITIV LANDSBERG,

Plaintiff,

v.

TACY KIM, and
ERNEST COLORADO, INC.

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Joint Motion to Compel Arbitration and Stay Proceedings [Docket No. 52] and Plaintiff's Motion for Clarification [Docket No. 76]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Plaintiff Veritiv Landsberg ("Veritiv") is in the business of "marketing, selling, and distributing packaging, facility solutions, print and publishing products and services, and logistics and supply chain management solutions throughout North America." Docket No. 1 at 4, ¶ 14. On September 18, 2000, defendant Tacy Kim was hired by Veritiv's predecessor. *Id.* at 8, ¶ 29. Mr. Kim resigned from Veritiv's predecessor on September 14, 2007. *Id.* On October 26, 2009, Veritiv's predecessor rehired Mr. Kim. *Id.* Mr. Kim entered into the "Kim Agreement" with Veritiv's predecessor, which contained obligations to not disclose Veritiv's confidential and trade secret information. *Id.* at 8-10, ¶¶ 32-35. On October 26, 2009, Mr. Kim also signed an arbitration agreement. Docket

No. 52-2. Effective August 1, 2020, Veritiv updated its employee handbook to state that agreeing to arbitration was a term and condition of employment. Docket No. 52 at 8; Docket No. 52-1. Mr. Kim worked for Veritiv's predecessor as a Packaging Consultant until he resigned on July 14, 2025. Docket No. 1at 8, ¶ 29.

On August 8, 2025, Veritiv filed this action against Mr. Kim and Mr. Kim's current employer, defendant Ernest Colorado, Inc. ("Ernest"). *See generally id.* Veritiv asserts claims for breach of contract, tortious interference, breach of fiduciary duty, civil conspiracy, and trade secret misappropriation. *Id.* at 19-32.

On August 18, 2025, the Court entered a stipulated preliminary injunction order regarding defendants' use of Veritiv's confidential or trade secret information. *See* Docket No. 15 at 2-3. On December 12, 2025, Veritiv filed a motion to find defendants in contempt and to impose sanctions based on defendants' alleged violation of the preliminary injunction order. *See* Docket No. 41-1. The Court referred Veritiv's motion for contempt to the assigned magistrate judge, Chief Magistrate Judge Scott T. Varholak. Docket No. 42. On February 5, 2026, Chief Judge Varholak denied Veritiv's motion (the "Contempt Order"). *See* Docket No. 54 at 2. On February 19, 2026, Veritiv filed an objection to the Contempt Order. Docket No. 60.

On February 4, 2026, defendants filed a motion to compel arbitration of Veritiv's claims. Docket No. 52. On February 12, 2026, defendants moved to stay all proceedings pending determination of defendants' motion to compel arbitration, which the Court referred to the Chief Judge Varholak. Docket Nos. 56, 57. On February 20, 2026, defendants moved to stay their response to Veritiv's objection to the Contempt Order pending the Chief Judge Varholak ruling on the motion to stay. Docket No. 64.

On March 2, 2026, the Court granted defendants' motion in part, ordering defendants to file a response to Veritiv's objection within seven days if Chief Judge Varholak denied defendants' motion to stay. Docket No. 68. On March 11, 2026, Chief Judge Varholak granted defendants' motion to stay. *See* Docket No. 70 at 1. On April 24, 2026, Veritiv filed a motion for clarification of the Court's March 2, 2026 order, asking for clarification regarding defendants' obligation to respond to Veritiv's objection to the Contempt Order given the stay imposed by Chief Judge Varholak on March 11, 2026. *See* Docket No. 76 at 2.

## II. ANALYSIS

Defendants move to enforce an arbitration agreement between Veritiv and Mr. Kim and also move to compel Veritiv to arbitrate its claims against Ernest on an equitable estoppel theory. *See* Docket No. 52 at 1. Veritiv does not contest that an arbitration agreement exists between itself and Mr. Kim and that the claims in this case fall within the scope of the arbitration agreement. Rather, Veritiv argues that Mr. Kim waived his right to compel arbitration. *See* Docket No. 65 at 8. Veritiv also contends that the doctrine of equitable estoppel does not subject its claims against Ernest to arbitration. *See id.*

### A. Waiver of Right to Arbitration

To determine whether a party waived its right to arbitration, courts in the Tenth Circuit consider the following factors:

> 1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps

> [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988) (quotations and citation omitted). The *Peterson* factors should not be applied "mechanically so that each factor is assessed and the side with the greater number of favorable factors prevails." *BOSC, Inc. v. Bd. of Cnty. Comm'r of Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (quotation and citation omitted). Moreover, they are not an "exhaustive or exclusive" list of factors. *See id.* Rather, the *Peterson* factors "reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration, even when the party did not subjectively intend to do so." *Id.* (quotation and citation omitted). The party asserting waiver has the burden of persuasion, which is a "heavy one" given the strong federal policy in favor of arbitration. *See Strong v. Davidson*, 734 F. App'x 578, 581 (10th Cir. 2018) (unpublished) (quotation and citation omitted).

Turning to the first factor, the Court agrees that defendants took "*some* actions inconsistent with its right to demand arbitration" by, for instance, participating in discovery. *See BOSC*, 853 F.3d at 1174-75. However, taking some inconsistent actions does not necessarily weigh in favor of waiver, particularly where defendants filed their motion to compel arbitration before the Court ruled on any dispositive motion. *See id.* Relatedly, and as is also relevant to the second *Peterson* factor, defendants were not the ones who invoked the litigation machinery. Rather, Veritiv filed this case. Thus, defendants' participation in this case has largely been in defense of motions filed by Veritiv.

Regarding the third *Peterson* factor, defendants filed their motion to compel arbitration on February 4, 2026, which was approximately six months after Veritiv filed this case. While this delay is not insignificant, the delay was not so significant that it weighs in favor of finding waiver. At the time that defendants moved to compel arbitration, the case was in the early stages. While the parties had engaged in some discovery, only one deposition had been taken and no dispositive motions had been filed. *See* Docket No 65 at 6-7. This is also relevant to the fifth *Peterson* factor because, while defendants did serve some discovery requests, discovery in this case was minimal. Thus, the Court does not find that defendants took advantage of discovery procedures that would not be available in arbitration.

Regarding the fourth *Peterson* factor, defendants did not file a counterclaim. The sixth *Peterson* factor is also not at issue here because plaintiffs do not claim any prejudice from the six-month delay in defendants filing their motion for arbitration.

In evaluating the *Peterson* factors, the Court finds that plaintiff has not met its heavy burden to demonstrate waiver and that defendants therefore did not waive their right to arbitration. *See O'Connor v. BMW of N. Am., LLC,* No. 18-cv-03190-CMA-STV, 2020 WL 5260416, at *5 (D. Colo. July 23, 2020) (finding that defendant did not waive its right to arbitration where defendant "engaged in minimal litigation and that the parties were not well into preparation of the lawsuit when [defendant] filed the instant Motion [to compel arbitration]" and, while defendant waited over a year to file its motion to compel arbitration, plaintiff's argument that defendant knew of its right to arbitration from the outset of litigation was "speculative and unsupported"); *Shahin v. J & L Acquisitions, LLC*, 756 F. Supp. 3d 1230, 1236-37 (W.D. Okla. 2024) (finding that defendants did not

waive their right to arbitration where defendants demanded arbitration five months after the complaint was filed, defendants previously stipulated that jurisdiction in the court was proper, and defendants engaged in "some litigation activities," including "responding to discovery requests," but "trial is still several months away, there has been no motion practice, and neither party has taken advantage of discovery procedures that would not also be available in arbitration").

### B. The Operative Arbitration Agreement

The parties disagree as to which arbitration agreement is operative in this case. Veritiv contends that the arbitration agreement Mr. Kim signed in 2009 (the "2009 Arbitration Agreement"), Docket No. 52-2, is the operative agreement. *See* Docket No. 65 at 10-11. Defendants, however, rely upon Veritiv's arbitration policy as it appears in its employee handbook (the "Handbook Policy"), Docket No. 52-1, which has an effective date of August 1, 2020. *See* Docket No. 69 at 3-5.

The Court finds that the 2009 Arbitration Agreement is the operative arbitration agreement in this case. The 2009 Arbitration Agreement that Mr. Kim signed provides that it "cannot be modified except by a written instrument signed by the President of the Company" and the employee. *See* Docket No. 52-2 at 2. Because there is no evidence that the 2009 Arbitration Agreement was modified through a written instrument signed by Mr. Kim and the president of Veritiv, the 2009 Arbitration Agreement remains operative and the Handbook Policy is irrelevant.

Because defendants did not waive their right to arbitration, and the 2009 Arbitration Agreement is an enforceable agreement to arbitrate between Veritiv and Mr. Kim, the Court will compel the arbitration of Mr. Kim's claims pursuant to this agreement.

### C. <u>Equitable Estoppel</u>

Ernest, Mr. Kim's current employer, is not a party to the 2009 Arbitration Agreement. *See id*. Defendants, however, claim that Veritiv's claims against Mr. Kim are substantially interdependent with its claims against Ernest and, as a result, Veritiv should be ordered to arbitrate its claims against Ernest as well. Docket No. 52 at 9.

"A court may compel a plaintiff that is a party to an arbitration agreement to arbitrate disputes with a defendant that is not." *Munoz v. Conduent State & Loc. Sols.,* Inc., 2025 WL 799482, at *3 (10th Cir. Mar. 13, 2025) (unpublished). "State law equitable estoppel doctrine may allow a nonparty (or 'nonsignatory') to an arbitration agreement to enforce that agreement against a plaintiff." *Id.* Under Colorado law,[1] in order for equitable estoppel to apply, the party asserting equitable estoppel must make a "clear showing of each of the following four elements":

> The party against whom the estoppel is asserted must know the relevant facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. 2019) (alterations and citation omitted). The Colorado Supreme Court notes that the "basic premise" of the equitable estoppel doctrine is that it "arises where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *Id.* at 66 (citation omitted). The Court finds that defendants have not shown any detrimental reliance. Defendants fail to identify any conduct or statement by Veritiv

---

[1] Both sides assume that the applicable state law would be that of Colorado. The Court will assume the same.

that prevented it from demanding arbitration. Accordingly, the Court will not enforce the arbitration agreement as it relates to Veritiv's claims against Ernest.

Although Veritiv's claims against Ernest are not subject to arbitration, the Court will stay the proceedings against Ernest given that the Court will order the arbitration of claims against Mr. Kim. *See Pierce v. Photobucket Inc.*, No. 24-cv-03432-PAB-NRN, 2026 WL 672764, at *17 (D. Colo. Mar. 10, 2026) ("Given the significant overlap between the arbitrable claims and nonarbitrable claims and potential for a preclusive effect, the Court finds that a stay of this proceeding pending arbitration is warranted.") (collecting cases). However, the Court will not stay the enforcement of the preliminary injunction order. The 2009 Arbitration Agreement states that claims excluded from the scope of the agreement include "a judicial action by either party for a temporary restraining order or preliminary injunction to secure interim relief pending arbitration." Docket No. 52-2 at 1, § 1b.

**D. <u>Veritiv's Objection and Motion to Clarify</u>**

Veritiv objects to Chief Judge Varholak's February 5, 2026 Order "to the extent it denies Veritiv's Motion for Contempt as to Defendants' violation of Paragraph 1(b) of this Court's Preliminary Injunction Order." Docket No. 60 at 1. Defendants have not yet responded to Veritiv's objection given that Chief Judge Varholak stayed proceedings pending the Court's ruling on defendants' motion to compel arbitration. *See* Docket No. 77 at 1-2. Veritiv's motion for clarification asks that the Court "clarify that Defendants' obligation to respond to Plaintiff's Rule 72 objections is not stayed and order Defendants to file their response within seven (7) days of the Court's clarification order." Docket No. 76 at 6.

Since the Court has now ruled on the arbitration motion, Chief Judge Varholak's stay order is no longer in effect and therefore Veritiv's motion seeking clarification on the nature of the stay is moot. This case will be stayed based on the arbitration of Veritiv's claims against Mr. Kim. Nonetheless, the Court will except from the stay issues related to compliance with the preliminary injunction order. Because the basis for Veritiv's objection to the Contempt Order is that defendants are violating the preliminary injunction order, the Court will consider this objection. Accordingly, defendants shall respond to Veritiv's objection to the Contempt Order, Docket No. 60, within 14 days of the date of this order.

## III. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Joint Motion to Compel Arbitration and Stay Proceedings [Docket No. 52] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that Plaintiff's Motion for Clarification [Docket No. 76] is **DENIED as moot**. It is further

**ORDERED** that defendants shall respond to Veritiv's objection, Docket No. 60, within **14 days** of the date of this order. It is further

**ORDERED** that Veritiv and Mr. Kim shall proceed to arbitrate their dispute in accordance with the 2009 Arbitration Agreement. It is further

**ORDERED** that this case is **STAYED**, other than as to issues related to compliance with the preliminary injunction order, pending arbitration of Veritiv's claims against Mr. Kim. It is further

**ORDERED** that the parties shall file a status report within 30 days of the completion of arbitration proceedings.

DATED September 28, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge